# EXHIBIT 4

**Expert Witness Report**

**of**

**Lisa A. Alter**

**Pursuant to**

**Rule 26(a)(2)(B)**
**Of the Federal Rules of**
**Civil Procedure**

**September 3, 2021**

This report is submitted pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

## I.        Qualifications

I am an attorney (licensed in New York, California, and New Jersey) with an office located in New York, New York (Alter, Kendrick & Baron, LLP). The majority of our firm's practice focuses on complex copyright analyses and transactions in the music industry, with a special emphasis on matters involving terminations of transfers of copyright and copyright due diligence in connection with the acquisition and sale of music catalogs. Our clients include composers, lyricists, musical estates, and music publishers. In addition to our analytic and transactional work we advise music copyright owners with respect to the significance of current and pending domestic and international legislation. I was actively involved in representing the interests of songwriters and their heirs during the process of the enactment of the Sonny Bono Copyright Term Extension Act of 1998. I speak frequently at professional conferences on the topic of termination of transfers of copyright and am the author of "Protecting Your Musical Copyrights." I have also served as a visiting professor of law at Yale Law School. A copy of my c.v. is annexed to this report. I have not testified as an expert at trial or by deposition in any other cases during the previous four (4) years. I have not authored any publications in the last 4 years.

The opinions set forth herein are based on my thirty-five (35) plus years of experience practicing as an attorney.

## II.      Scope of Engagement

I have agreed to be engaged as an expert witness in the matters of *SA Music, LLC et. al. v. Apple, Inc., et. al.*, 20-cv-2146 (WHO), 20-cv-2794 (WHO), 20-cv-2965 (WHO). This expert witness report sets forth the opinions I have formed based on my review of the documents more fully described in Section III of this report. Pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure, I may find it appropriate to revise, supplement, update, or modify this report at a later date based upon additional documents and/or information.

I have been compensated at a rate of Seven Hundred Seventy-Five Dollars ($775) per hour.

## III.     Data or Information Used for this Report

I have reviewed the following documents:

1.  Chain of Title Report for SA Music, LLC and the Harold Arlen Trust annexed hereto as Exhibit 1 (the "Arlen Chain of Title Report");

2.  Chain of Title Report for Ray Henderson Music Co., Inc. annexed hereto as Exhibit 2 (the "Henderson Chain of Title Report"); and

3.  Chain of Title Report for Four Jays Music Company annexed hereto as Exhibit 3 (the "Warren Chain of Title Report").

For purposes of this Report, I have assumed that the information contained in each of the Arlen Chain of Title Report, the Henderson Chain of Title Report, and the Warren Chain of Title Report is true and accurate, including the information relating to the copyright filings (registrations, renewals, and terminations).

2

IV.    **Summary of Opinion**

In my opinion:

1.  the Arlen Chain of Title Report accurately sets forth the chain of title with respect to the Harold Arlen ("Arlen") share of certain musical compositions written in whole or in part by Arlen (the "Subject Arlen Compositions") in the territory of the United States;

2.  the Henderson Chain of Title Report accurately sets forth the chain of title with respect to the Ray Henderson ("Henderson") share of certain musical compositions written in whole or in part by Henderson (the "Subject Henderson Compositions") in the territory of the United States; and

3.  the Warren Chain of Title Report accurately sets forth the chain of title with respect to the Harry Warren ("Warren") share of certain musical compositions written in whole or in part by Warren (the "Subject Warren Compositions") in the territory of the United States.

V.    **Basis For Opinion**

1.  **Copyright Ownership**

Pursuant to the United States Copyright Act (the "Act") copyright ownership of a work subject to copyright protection vests in the author or authors of the work upon its creation.[1] Authors of joint works are co-owners of the copyright. Authors of works contributed to collective works own the copyright only in their contribution, which is distinct from the copyright in the collective work as a whole. In the case of a work made for hire, absent an agreement to the contrary the employer will own all rights in the work.[2]

2.  **Scope of Copyright Ownership**

Section 106 of the Act[3] lists six (6) exclusive rights of the copyright owner, which include the rights:

(1)     to reproduce the copyrighted work in copies or phonorecords;
(2)     to prepare derivative works based upon the copyrighted work;
(3)     to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
(4)     in the case of literary, musical, dramatic, and choreographic works, to perform the copyrighted work publicly;
(5)     in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
(6)     in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.[4]

---

[1] 17 U.S.C. § 201(a).
[2] 17 U.S.C. § 201(b).
[3] 17 U.S.C. § 106.
[4] *Id*.

### 3.   Transfer of Copyrights

Copyright ownership may be transferred through assignments and contracts made by the original or subsequent copyright owner, or may be bequeathed by will. If an author or current copyright owner passes away leaving an estate that includes copyrighted works, ownership will pass either to the beneficiary designated in the author/owner's will or, if there is no will, to the author/owner's legal heirs.

### 4.   Registration and Renewal of Copyrights

Registering Works

Original works may be registered with the United States Copyright Office (the "Copyright Office") at any time after their creation. Works registered for copyright prior to 1978 were protected for an initial term of copyright of twenty-eight (28) years.  Although copyright is now secured automatically upon the creation of a work even if no registration is made, it is advisable to officially register a copyright with the Copyright Office in order to establish priority as well as to document title.

Renewal Claimants

The Person(s) with standing to renew a copyright is the author, if the author is still living. If the author dies during the initial term of United States copyright the persons with standing to renew are the author's spouse and children. If neither the author's spouse or children are living, then the persons with standing to renew are the author's executor(s) or, in the absence of a will, the authors next of kin.[5]

Publication of Copyrighted Works

Publication is defined in the Act as the "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[6] Since January 1, 1978, the inclusion of a composition on a sound recording has constituted publication. The simple public performance of a composition does not constitute publication. The date of publication of a work may be significant in determining the duration, as well as statutory termination windows, of the work.

### 5.   Vesting of Renewal Term Rights in Pre-1978 Works

Ownership of Renewal Term Rights When Author Survives the Renewal Term

If an author lives into the renewal term of copyright, the ownership of the renewal term rights rests with the author unless the author has entered into an agreement transferring renewal term rights. If the author conveyed rights to a music publisher for the full term of copyright, including renewals and extensions thereof, the music publisher will continue to own the work in the renewal term subject to the applicable statutory termination provisions. If the author granted rights only for the initial term of copyright, rights will revert to the author on the commencement of the renewal term of copyright.

---

[5] With respect to works renewed prior to 1/1/1978, Act of Mar. 4, 1909, ch. 320, § 23, 35 Stat. 1075; With respect to works renewed from 1/1/1978 on, 17 U.S.C. § 304(a)(3)(A)(ii).
[6] 17 U.S.C. §101.

<u>Effect of Author's Death During the Initial Term of Copyright</u>

If an author dies before the end of the twenty-eighth (28th) year of copyright, the renewal term rights automatically vest in the author's heirs (which may include the widow/widower or children of the author, the author's executor(s), or the author's next of kin) regardless of whether the author assigned the renewal term of copyright to a third party prior to his or her death.[7] A limited exception to this rule occurs if the author properly renewed the copyright during the twenty-eighth (28th) year of copyright, assigned the renewal term rights in the composition during that year, and subsequently died. In this limited circumstance, renewal term rights will remain with the assignee.

In general, when an author dies during the initial term of copyright, an assignee of the author such as a music publishing company may not rightfully claim the copyright during the renewal term unless (i) the author's heirs were party to an initial grant of renewal term rights, or (ii) the author's heirs subsequently assign the copyright for the renewal term to the music publisher.[8]

## 6.   Statutory Termination of Transfers

The Act contains two (2)[9] provisions pursuant to which authors, or the heirs of deceased authors, may be able to terminate a grant of copyright and recapture rights in their works for the territory of the United States.[10] While Section 304(d) of the Act provides a limited opportunity for authors or the statutory heirs of deceased authors to terminate a grant of copyright where the period for service of notice of termination was missed under section 304(c), this provision is now absolute and, accordingly, outside the scope of this opinion. The statutory termination provisions are founded on the premise that copyright is meant to protect the interests of authors. While clearly the Act also affords significant support for grantees – the music publishers, record labels, book publishers, motion picture studios, and other entities who acquire rights from creators – Congress's intent in enacting the statutory termination provisions was to safeguard authors against unremunerative transfers.[11]

<u>Historical Background, Legislative Intent and Significance of Statutory Termination Right</u>

Under the law in effect prior to the passage of the 1976 revision of the Act, works of original authorship were afforded two (2) separate twenty-eight (28) year terms of copyright protection in the United States. This two (2) term system is preserved under the current Act with respect to works registered for copyright or published prior to January 1, 1978.[12] Such pre-1978 works are protected under the Act for an initial term of twenty-eight (28) years.[13] Upon the

---

[7] Section 304(a)(1)(C) of the Act designates the persons entitled to renew a copyright registration in the event that the author has died prior to the commencement of the renewal term: "(ii) the widow, widower, or children of the author, if the author is not living, (iii) the author's executors, if such author, widow, widower, or children are not living, or (iv) the author's next of kin, in the absence of a will of the author." 17 U.S.C. § 304(a)(1)(C).

[8] *See* Stewart v. Abend, 495 U.S. 207, 219-20 (1990).

[9] While Section 304(d) of the Act provides a limited opportunity for authors or the statutory heirs of deceased authors to terminate a grant of copyright where the period for service of notice of termination was missed under section 304(c), this provision is now absolute and, accordingly, outside the scope of this opinion.

[10] *See* 17 U.S.C. §§ 203, 304(c), and 304(d).

[11] H.R. Rep. No. 94-1476 at 124 (1976).

[12] 17 U.S.C. § 304(a).

[13] *Id.*

expiration of the initial term of copyright, the author is entitled to renew the copyright for a second term, which was extended under the 1976 revision of the Act to forty-seven (47) years.[14] The renewal term was further extended by an additional twenty (20) years under the Sonny Bono Copyright Term Extension Act of 1998, bringing the term of protection for pre-1978 works to a total of ninety-five (95) years, divided into an initial term of twenty-eight (28) years and a renewal term of sixty-seven (67) years.[15] Though the original purpose of providing for a renewal term was to allow authors an opportunity to renegotiate grants of their copyrights upon the work entering the renewal term, it became common practice for publishers to require authors to assign both their initial and renewal rights in a work at the same time, thwarting legislative intent. This practice was upheld by the Supreme Court in its 1943 decision in the case of *Fred Fisher Music Co. v. M. Witmark & Sons*.[16]

The legislative history surrounding the 1976 revision of the Act evidences that in enacting the copyright termination provisions, Congress sought to put an end to the practice of third parties buying up an author's "contingent future interests [in a work] as a form of speculation."[17] Indeed, the Act explicitly stipulates that termination of applicable grants may be effected "notwithstanding any agreement to the contrary" including any agreement to make a future grant.[18] The Supreme Court has opined that the right to terminate transfers of copyright is an "inalienable" right.[19]

Congress deemed the copyright termination provisions necessary "because of the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited."[20] However, as a result of the lobbying efforts of book and music publishers anxious to hold on to their copyrights, the mechanism that Congress put in place in order to allow authors and their heirs to terminate grants of copyright under the Act is highly complex. Congress itself characterized the legislation as a "practical compromise that will further the objectives of the copyright law while recognizing the problems and legitimate needs of all interests involved."[21] Arguably, this compromise has spawned certain inconsistencies in the statute that may necessitate judicial interpretation and/or a legislative "fix."

As the legislative history and relatively limited case law in this area highlights, the opportunity to terminate grants under copyright is an important protection afforded to authors under the Act.

<u>Termination of Pre-1978 Grants</u>

Pursuant to Section 304(c) of the Act, grants or licenses of pre-1978 copyrights <u>executed by the author or the author's heirs before January 1, 1978</u>, may be terminated by the author or the author's statutory heirs during a five (5) year period beginning fifty-six (56) years after the date of copyright.[22] Any exclusive or non-exclusive grant may be terminated, with the exception of grants of rights in works made for hire or grants made by will.[23] A grant may be terminated even if the original contract states that the grantee shall be entitled to retain its rights for the entire term

---

[14] H.R. Rep. No. 94-1476 at 139 (1976).
[15] *See* S. Rep. No. 104–315 at 22 (1996).
[16] Fred Fisher Music Co. v. M. Witmark & Sons, 318 U.S. 643 (1943).
[17] H.R. Rep. No. 94-1476 at 127 (1976).
[18] 17 U.S.C. §§ 203(a)(5), and 304(c)(5).
[19] Stewart, 495 U.S. at 230.
[20] H.R. Rep. No. 94-1476 at 124 (1976).
[21] *Id*.
[22] 17 U.S.C. § 304(c)(1), and (3).
[23] 17 U.S.C. § 304(c).

of copyright, including renewals and extended terms, because the statutory termination right supersedes the contract.

If the author dies before exercising the termination right, the termination interest vests in the author's statutory heirs.[24] In the case of a deceased author, notice of termination under Section 304(c) must be served by a minimum of fifty-one percent (51%) of the statutory heirs.[25]

Notice of termination must be served on the grantee or the grantee's successor in title no more than ten (10) nor less than two (2) years before the effective date of termination.[26] Accordingly, notice may be served anytime during the period beginning forty-six (46) years after the date copyright was initially secured and continuing until fifty-nine (59) years after such date. Pursuant to United States law, with respect to works created prior to January 1, 1978, the date that copyright is initially secured is deemed to be the earlier of (i) the date of registration of the work in the Copyright Office, or (ii) the date of publication of the work. The notice and termination windows that apply to grants of pre-1978 works are keyed to the actual date of registration or publication, as the case may be. For example, if a work is initially registered for copyright (prior to publication) on February 14, 1970, notice of termination may be served between February 14, 2016, and February 14, 2029. Termination may be effected, with proper notice, between February 14, 2026, and February 14, 2031. If, on the other hand, the work was published prior to registration then the period for serving notice of termination would be calculated based on the earlier publication date.

Termination of Post-1977 Grants

Pursuant to Section 203 of the Act, grants executed by the author on or after January 1, 1978, may be terminated by the author or the author's statutory heirs[27] during a five (5) year period beginning thirty-five (35) years after the date of the grant; or, if the grant includes the right of publication of the work, during the five (5) year period beginning on the earlier of (i) thirty-five (35) years after publication under the grant, or (ii) forty (40) years after the date of the grant.[28] Any exclusive or non-exclusive grant by the author may be terminated, with the exception of grants of rights in works made for hire or grants made by will.[29] A grant may be terminated even if the contract states that the grantee shall be entitled to retain its rights for the entire term of copyright because, as with terminations under Section 304(c), the statutory termination right supersedes the contract.

---

[24] 17 U.S.C. § 304(c)(2). For purposes of the termination provisions of the Act, where an author is dead, his or her termination interest is owned, and may be exercised, by his or her statutory heirs, which are set forth as follows: "(A) The widow or widower owns the author's entire termination interest unless there are surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest. (B) The author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower, in which case the ownership of one-half of the author's interest is divided among them. (C) The rights of the author's children and grandchildren are in all cases divided among them and exercised on a per stirpes basis according to the number of such author's children represented; the share of the children of a dead child in a termination interest can be exercised only by the action of a majority of them. (D) In the event that the author's widow or widower, children, and grandchildren are not living, the author's executor, administrator, personal representative, or trustee shall own the author's entire termination interest." *Id.*

[25] 17 U.S.C. § 304(c)(1).

[26] 17 U.S.C. § 304(c)(4)(A).

[27] For purposes of Section 203 of the Act, statutory heirs are defined in the same manner as in Section 304(c). *See supra* note 23.

[28] 17 U.S.C. § 203(a)(3).

[29] 17 U.S.C. § 203.

Notice of termination pursuant to Section 203 must be served on the grantee or the grantee's successor in title no more than ten (10) nor less than two (2) years before the effective date of termination.[30] Accordingly, notice may be served at any time during the period beginning twenty-five (25) years after the date of the grant by the author and continuing until thirty-eight (38) years after the date of the grant by the author; provided, if the grant includes the right of publication of the work, notice must be served during the earlier to occur of (i) the period beginning twenty-five (25) years after the date of publication and continuing until thirty-eight (38) years after the date of publication, or (ii) the period beginning thirty (30) years after the date of the grant and continuing until forty-three (43) years after the date of the grant. For example, if a composition, including the publication rights thereto, is granted by an author to a music publisher in an agreement dated October 4, 1980 and the composition is first published on April 1, 1981, notice of termination may be served between April 1, 2006, and April 1, 2019. Termination may be effected, with proper notice, between April 1, 2016, and April 1, 2021.

If the work subject to termination under Section 203 is a joint work and the grant was executed by two (2) or more authors, then the termination must be effected by a majority of the authors who executed the grant.[31] Thus, if a post-1977 grant is executed by two (2) authors of a work, both of those authors must sign the notice of termination. In the event that any author is deceased, that author's termination interest vests in his or her statutory heirs and may be exercised by a minimum of fifty-one percent (51%) of them.[32]

### 7. Dates of Death and Statutory Heirs of Arlen, Henderson, and Warren

We have been advised that Arlen died on April 23, 1986, leaving one (1) statutory heir (as defined in Section 304(c)(2) of the Act).[33]

We have been advised that Henderson died on December 31, 1970, leaving three (3) statutory heirs (as defined in Section 304(c)(2) of the Act).[34]

We have been advised that Warren died on September 22, 1981 leaving two (2) statutory heirs.[35]

### 8. Chain of Title Review

Chain of Title in Subject Arlen Compositions

*Assumptions*:[36]

In rendering my opinions in this case, I have assumed the following to be true:

- The Arlen Chain of Title Report accurately identifies the copyright registrations and renewals for the Subject Arlen Compositions, including the dates they were filed.

---

[30] 17 U.S.C. § 203(a)(4)(A).
[31] 17 U.S.C. § 203(a)(1).
[32] 17 U.S.C. § 203(a)(2).
[33] We have been advised that Arlen's sole statutory heir was his son, Samuel Arlen.
[34] We have been advised that Henderson's sole statutory heirs were his children, Howard Henderson, Dorothy Johnson, and Jane Henderson Robson.
[35] We have been advised that Warren's sole statutory heirs were his wife, Josephine Warren, and his daughter, Joan Warren Jones.
[36] Assumptions are based on information provided by plaintiff's counsel and have not been subject to independent review.

- Arlen died in the renewal term of United States copyright with respect to each of the Subject Arlen Compositions.

- At the time of his death, Arlen had one statutory heir, his son Sam Arlen.

- The Arlen Chain of Title Report accurately identifies the notices of termination for each of the Subject Arlen Compositions, including the identity of the party serving the termination, the dates they were recorded, the identity of the parties terminated, and the effective dates of termination.

- Notice of termination with respect to each of the Subject Arlen Compositions was served on the original grantee or the successor in interest to the original grantee of the rights subject to termination.

- Each of the Subject Arlen Compositions respecting which Harold Arlen served notice of termination pursuant to Section 304(c) of the Act passed to the Harold Arlen Trust in accordance with the last will and testament of Arlen.[37]

- The recipient of the notice of termination with respect to each of the Subject Arlen Compositions has relinquished rights to said works in the United States.

*Findings*:

Based on my review of the Arlen Chain of Title Report it is my opinion that:

- Each of the Subject Arlen Compositions has been registered for copyright in the Copyright Office and renewal applications were timely filed.

- Rights in each of the Subject Arlen Compositions were conveyed to one (1) or more third-party music publishers for the initial and/or renewal term of copyright.

- Notice of termination were validly served by Arlen or his statutory heir in accordance with Section 304(c) of the Act with respect to each of the Subject Arlen Compositions.

- Rights in each of the Subject Arlen Compositions respecting which notice of termination was served reverted to Arlen or his statutory heir in the United States on the respective effective date of termination.

- From and after the respective effective date of termination, rights in each of the Subject Arlen Compositions respecting which notice of termination was served by Harold Arlen's statutory heirs were assigned to SA Music, LLC.

Chain of Title in Subject Henderson Compositions

*Assumptions*:[38]

---

[37] Rights in the following Subject Arlen Compositions passed to the Harold Arlen Trust under Arlen's will:  *Get Happy*, *Kickin' The Gong*, *Minnie The Moocher's Wedding Day*, and *The Devil And The Deep Blue Sea*.

[38] Assumptions are based on information provided by plaintiff's counsel and have not been subject to independent review.

9

In rendering my opinions in this case, I have assumed the following to be true:

- The Henderson Chain of Title Report accurately identifies the copyright registrations and renewals for the Subject Henderson Compositions, including the dates they were filed.

- Henderson died in the renewal term of United States copyright with respect to each of the Subject Henderson Compositions.

- At the time of his death, Henderson had three statutory heirs, his children Howard Henderson, Dorothy Johnson, and Jane Henderson Robson.

- The Henderson Chain of Title Report accurately identifies the notices of termination for each of the Subject Henderson Compositions, including the identity of the party serving the termination, the dates they were recorded, the identity of the parties terminated, and the effective dates of termination.

- Notice of termination with respect to each of the Subject Henderson Compositions was served by Henderson's statutory heirs on the original grantee or the successor in interest to the original grantee of the rights subject to termination.

- The recipient of the notice of termination with respect to each of the Subject Henderson Compositions has relinquished rights to said works in the United States.

*Findings*:

Based on my review of the Henderson Chain of Title Report, it is my opinion that:

- Each of the Subject Henderson Compositions has been registered for copyright in the Copyright Office and renewal applications were timely filed.

- Rights in each of the Subject Henderson Compositions were conveyed to one (1) or more third-party music publishers for the initial and/or renewal term of copyright.

- Notice of termination were validly served by Henderson's statutory heirs in accordance with Section 304(c) of the Act with respect to each of the Subject Henderson Compositions.

- Rights in each of the Subject Henderson Compositions respecting which notice of termination was served reverted to Henderson's statutory heirs in the United States on the respective effective date of termination.

- From and after the respective effective date of termination, rights in each of the Subject Henderson Compositions respecting which notice of termination was served were assigned to Ray Henderson Music Co., Inc. by Henderson's children.

Chain of Title in Subject Warren Compositions

*Assumptions*:[39]

---

[39] Assumptions are based on information provided by plaintiff's counsel and have not been subject to independent review.

In rendering my opinions in this case, I have assumed the following to be true:

- The Warren Chain of Title Report accurately identifies the copyright registrations and renewals for the Subject Warren Compositions, including the dates they were filed.

- Warren died in the renewal term of United States copyright with respect to each of the Subject Warren Compositions with the exception of *Innamorata*.

- Rights in nine (9) of the Subject Warren Compositions[40] were granted for the initial term of United States copyright only. At the time of his death all of those Subject Warren Compositions had reverted to Warren as a matter of contract and passed to his widow and his trust in accordance with his will and ultimately to his grandchildren.

- Rights in additional Subject Warren Compositions may have been owned by Warren during his lifetime and assigned by Warren to Four Jays Music Co. in 1955[41] and 1957[42]. Rights in each of these Subject Warren Compositions were also included on the assignment from Warren's grandchildren to Four Jays Music Co. in 1996.

- Warren or his statutory heirs served notice of termination with respect to certain of the Subject Warren Compositions respecting which rights were granted for the full term of copyright was served on the original grantee or successor in interest to the original grantee of the rights subject to termination.

- Rights in additional Subject Warren Compositions were owned by Warren at the time of his death.[43]

- At the time of his death, Warren had two statutory heirs: Josephine Warren (widow) and Joan "Cookie" Jones (child).

- Joan "Cookie" Jones predeceased Josephine Warren. Joan and Josephine's only statutory heirs were Harry Warren's three grandchildren: Julia Riva, Jophe Jones, and Peter Hacker.

- The Warren Chain of Title Report accurately identifies the notices of termination for each of the Subject Warren Compositions, including the identity of the party serving the termination, the dates they were recorded, the identity of the parties terminated, and the effective dates of termination.

- Notice of termination served with respect to each of the Subject Warren Compositions respecting which rights were granted for the full term of copyright was served on the original grantee or successor in interest to the original grantee of the rights subject to termination by Warren's statutory heirs.

---

[40] These compositions include: *(Howdy Neighbor) Happy Harvest*, *House of Singing Bamboo*, *I Wanna Be A Dancin' Man*, *If You Feel Like Singing Sing*, *Stanley Steamer, Tahiti*, *That's Amore*, *You Wonderful You*, and *Young Folks Should Get Married*.
[41] These Subject Warren Compositions may include some or all of the following: *Coffee Time*, *You Got Me Where You Want Me*, *By The River Sainte Marie*, and *Sing A Little Jingle*.
[42] These Subject Warren Compositions include *Home in Pasadena*.
[43] These Subject Warren Compositions may include some or all of the following: *Innamorata* and *That's Amore*.

11

- Rights in Subject Warren Compositions vested in Warren's grandchildren following the death of Warren's wife, Josephine.

- The recipient of the notice of termination with respect to each of the Subject Warren Compositions has relinquished rights to said works in the United States.

*Findings*:

Based on my review of the Warren Chain of Title Report I have confirmed the following:

- Each of the Subject Warren Compositions were registered for copyright in the Copyright Office and renewal applications were timely filed.

- Rights in each of the Subject Warren Compositions were conveyed to one (1) or more third party music publishers for the initial and/or renewal term of copyright.

- Notice of termination were validly served by Warren or his statutory heirs in accordance with Section 304(c) of the Act with respect to each of the Subject Warren Compositions respecting which rights were originally granted for the full term of United States copyright.

- Rights in each of the Subject Warren Compositions respecting which notice of termination was served reverted to Warren or his statutory heirs in the United States on the respective effective date of termination.

- From and after the respective effective date of termination, rights in each of the Subject Warren Compositions respecting which notice of termination was served were assigned to Four Jays Music Company by Warren's grandchildren.

## VI.   **Statement of Opinion**

Based on the above analysis of applicable law, and the facts in the present matter, including an examination of all relevant transfers and assignments it is my opinion that the chain of title information related to the Subject Arlen Compositions establishes that the Subject Arlen Compositions are the subject of valid copyrights and are owned by SA Music, LLC or the Harold Arlen Trust in the territory of the United States in the percentages indicated. It is my further opinion that the chain of title information related to the Subject Henderson Compositions establishes that the Subject Henderson Compositions are the subject of valid copyrights and are owned by Ray Henderson Music Co., Inc. in the territory of the United States in the percentages indicated. Finally, it is my opinion that the chain of title information related to the Subject Warren Compositions establishes that the Subject Warren Compositions are the subject of valid copyrights and are owned by Four Jays Music Company in the territory of the United States in the percentages indicated.

Dated this 3rd day of September 2021.

12